HUDSONVILLE CREAMERY & ICE CREAM COMPANY, LLC v
DEPARTMENT OF TREASURY

Docket No. 322968. Submitted November 10, 2015, at Lansing. Decided
March 29, 2016, at 9:05 a.m..

Hudsonville Creamery & Ice Cream Company, LLC, filed a petition
in the Tax Tribunal against the Department of Treasury, alleging
that the department improperly calculated the tax liability it
owed under the Michigan Business Tax Act (BTA), MCL 208.1101
*et seq.*, for the tax year 2008. To offset its tax liability for that year,
Hudsonville Creamery had sought a refund under MCL
208.1437(18) of the BTA through the carryforward of brownfield
redevelopment tax credits issued to it under the former Michigan
Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, which the
department denied. The tribunal granted summary disposition in
favor of the department, drawing a distinction between the
treatment of credits and the carryforward of credits for purposes
of a refund under MCL 208.1437(18). It concluded that while
MCL 208.1437(18) allowed credits to be refunded to offset tax
liability under the BTA, the subsection did not allow a refund for
the carryforward of the credits Hudsonville Creamery had earned
under the SBTA. Hudsonville Creamery appealed.

The Court of Appeals *held*:

1. As initially enacted, the BTA did not allow qualified tax-
payers or assignees to seek a refund of credits or unused carry-
forward credits allowed under MCL 208.1437. Instead, MCL
208.1437(18) provided that if the credit allowed under MCL
208.1437 for the tax year and any unused carryforward of the
credit allowed under MCL 208.1437 exceeded the qualified tax-
payer's or assignee's tax liability for the tax year, those credits and
unused carryforward credits could be carried forward to offset tax
liability in subsequent tax years for 10 years, or until used up,
whichever occurred first. However, 2008 PA 89 amended MCL
208.1437(18), which then provided that after a certain date, if the
credit allowed under MCL 208.1437 for the tax year exceeded the
qualified taxpayer's tax liability for the tax year, the qualified
taxpayer could elect to have the excess refunded at a rate of 85% of
that portion of the credit that exceeded the tax liability of the

qualified taxpayer for the tax year in exchange for forgoing the remaining 15% of the credit and any carryforward.

2. The BTA does not define the word credit. MCL 208.1103 of the BTA directs that an undefined term in the BTA has the same meaning as when used in comparable context in federal income tax laws. Under the Internal Revenue Code, 26 USC 38(1) in part defines general business credits as the business credit carryforwards carried to that year. The tribunal erred by concluding that Hudsonville Creamery could not claim a refund under MCL 208.1437(18) for the brownfield redevelopment tax credit carryforwards it was issued under the SBTA. Relying on the Internal Revenue Code for guidance, the term tax credit is a broad concept that unequivocally includes a credit carryforward. Therefore, for purposes of determining whether a refund was available under MCL 208.1437(18), the phrase "if the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year" included Hudsonville Creamery's credit carryforwards that originated under the SBTA.

3. This Court's decision in *Ashley Capital, LLC v Dep't of Treasury*, 314 Mich App 1 (2015), supports the inclusion of credit carryforwards in the definition of those credits that were eligible for a refund under MCL 208.1437(18) because, in the context of sequencing credits under a different section of the BTA, this Court previously concluded in part that the word credit encompassed a carryforward of a credit earned under the SBTA. The plain language of the fifth sentence of MCL 208.1437(18), which allows credit carryforwards to be claimed against the tax imposed under the BTA, also supports the conclusion that Hudsonville Creamery's carryforward of the brownfield redevelopment credits issued under the SBTA were credits for purposes of MCL 208.1437(18) and as such qualified for a refund under that section, regardless of the fact that the credits were carried forward from another tax year. The omission of the word "carryforward" from the sixth sentence of MCL 208.1437(18), which allows for a refund if the credit allowed under MCL 208.1437(8) exceeded the qualified taxpayer's liability for the tax year, does not compel a different result because tax credits in a given year were commonly understood under the BTA to include carryforwards like the one in this case. In addition, had the Legislature intended to exclude credit carryforwards from refunds under MCL 208.1437(18), it could have expressed that intention when it amended the BTA but chose not to do so.

Reversed and remanded.

METER, P.J., dissenting, disagreed with the majority's analysis of MCL 208.1437(18). The first sentence of the subsection allows certain credits and the carryforward of credits to be carried forward in subsequent years but not refunded, but the sixth sentence of the subsection only allows for a refund if the credit allowed under MCL 208.1437(18) exceeded the taxpayer's tax liability for the tax year. While the first sentence contains language allowing qualified taxpayers to carry forward both credits allowed under that subsection and any unused carryforward of the credits under that subsection, the sixth sentence only contains language allowing qualified taxpayers to elect to have excess credits allowed under MCL 208.1437(18) refunded. The Legislature's omission of the words "unused carryforward of credits" in the sixth sentence was intentional. The language of the sixth sentence—the credit allowed under this section for the next year—would be rendered nugatory if it were interpreted to include credits carried over from other years. The majority's reliance on *Ashley Capital* was unpersuasive because that case did not address the interpretation of the sixth sentence of MCL 208.1437(18). Judge METER found no merit in the other issue raised by Hudsonville Creamery involving former MCL 208.38g(34)(c) and would have affirmed the tribunal's decision.

TAXATION — BUSINESS TAXES — TAX CREDITS — REFUNDS — CARRYFORWARD OF CREDITS.

Under MCL 208.1437(18) of the Michigan Business Tax Act, MCL 208.1101 *et seq.*, if the credits allowed under MCL 208.1437 for the tax year exceed the qualified taxpayer's tax liability for that year, the qualified taxpayer may seek a refund of the excess; for purposes of calculating whether the credits allowed under MCL 208.1437 exceed a qualified taxpayer's tax liability for that year, MCL 208.1437(18) provides that the credits allowed for the tax year include the carryforward of brownfield redevelopment credits issued in prior years under the former Michigan Single Business Tax Act, MCL 208.1 *et seq.*

*Warner Norcross & Judd LLP* (by *Matthew T. Nelson, Christian E. Meyer,* and *Thomas M. Amon*) for petitioner.

*Bill Schuette,* Attorney General, *Aaron D. Lindstrom,* Solicitor General, *Matthew Schneider,* Chief

Legal Counsel, and *Emily C. Zillgitt*, Assistant Attorney General, for respondent.

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

BECKERING, J. Petitioner, Hudsonville Creamery & Ice Cream Company, LLC, appeals as of right the decision of the Michigan Tax Tribunal (MTT), which granted summary disposition to respondent, Department of Treasury, and denied petitioner's motion for the same. At issue in this case is whether certain brownfield tax credits issued to petitioner under the former Michigan Single Business Tax Act (SBTA), MCL 208.1 *et seq.*, are eligible for a refund under MCL 208.1437(18) of the Michigan Business Tax Act (MBTA), MCL 208.1101 *et seq.*[1] Because the common understanding of the term "credit" as it is used in MCL 208.1437(18) encompasses a carryforward, and because that statute permits an 85% refund for credits, without limitation, we hold that petitioner was entitled to a refund of 85% of its brownfield credits in the 2008 tax year. Accordingly, we reverse and remand.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2005, petitioner invested over $8 million in an approved brownfield redevelopment project under MCL 208.38g(2). Respondent issued petitioner a certificate of completion, indicating that petitioner, a "qualified taxpayer" under the SBTA, was eligible to

---

[1] Although the MBTA was repealed for most business tax filers on January 1, 2012, some businesses were permitted to continue filing MBTA returns in order to claim refundable tax credits. 2011 PA 39. The MBTA will be fully repealed when the last of those credits are claimed. See 2011 PA 39, enacting § 1 (stating that the MBTA "is repealed effective on the date that the secretary of state receives a written notice from the department of treasury that the last certification credit or any carryforward from that certificated credit has been claimed").

claim a brownfield redevelopment credit under MCL 208.38g. Accordingly, petitioner received $800,000[2] in brownfield redevelopment credits under the now-repealed SBTA.

Petitioner did not have any tax liability on its 2005, 2006, or 2007 SBTA returns, and as a result it did not have tax liability against which to apply its brownfield redevelopment credits. Having no SBTA tax liability for 2005-2007, petitioner carried forward its SBTA credits as allowed by former MCL 208.38g(15).[3] Thereafter, the Legislature repealed the SBTA and implemented the MBTA for tax years beginning after December 31, 2007. See 2006 PA 325.[4]

This case involves MCL 208.1437(18) of the MBTA. As originally enacted, the statute permitted a qualified taxpayer to carry forward brownfield redevelopment credits earned under the SBTA, but did not permit a refund of those credits. However, the Legislature subsequently amended the act, 2008 PA 89, and allowed for a refund in certain situations. MCL 208.1437(18) provides:

> Except as otherwise provided under this subsection, if the credit allowed under this section for the tax year and any unused carryforward of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year, that portion that exceeds the tax

---

[2] Of the $800,000, $562,685 was issued to petitioner and the remaining $237,315 was issued to Landmark Center, LLC. Although the relationship between petitioner and Landmark LLC is unclear from the record, it appears undisputed that petitioner has standing to pursue litigation with regard to the total amount of credits.

[3] Although MCL 208.38g(15) allowed unused credits to be carried forward, it did not permit a refund of those unused credits.

[4] In 2011 PA 39, the Legislature enacted legislation to repeal the MBTA and replace the act with the corporate income tax act, MCL 206.601 et seq.

liability for the tax year shall not be refunded but may be carried forward to offset tax liability in subsequent tax years for 10 years or until used up, whichever occurs first. Except as otherwise provided in this subsection, the maximum time allowed under the carryforward provisions under this subsection begins with the tax year in which the certificate of completion is issued to the qualified taxpayer. If the qualified taxpayer assigns all or any portion of its credit approved under this section, the maximum time allowed under the carryforward provisions for an assignee begins to run with the tax year in which the assignment is made and the assignee first claims a credit, which shall be the same tax year. The maximum time allowed under the carryforward provisions for an annual credit amount for a credit allowed under subsection (4) begins to run in the tax year for which the annual credit amount is designated on the certificate of completion issued under this section. A credit carryforward available under section 38g of former 1975 PA 228 that is unused at the end of the last tax year may be claimed against the tax imposed under this act for the years the carryforward would have been available under former 1975 PA 228. *Beginning on and after April 8, 2008, if the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year, the qualified taxpayer may elect to have the excess refunded at a rate equal to 85% of that portion of the credit that exceeds the tax liability of the qualified taxpayer for the tax year and forgo the remaining 15% of the credit and any carryforward.* [Emphasis added.][5]

---

[5] The emphasized refund provision was added by 2008 PA 89, which enacted the version of the statute that was in effect at the time petitioner filed its 2008 MBTA tax return. The Legislature has since made minor modifications to the statute in 2008 PA 578—adding the date of the amendatory act—and in 2009 PA 241—fixing an apparent typographical error. For ease of reference, and because the most recent version of the statute does not contain any substantive differences from the version that was in effect at the time petitioner filed its 2008 tax return, this opinion will refer to the most recent version of the statute unless otherwise noted.

When petitioner filed its 2008 MBTA tax return, it claimed a credit of $71,306 against its MBTA liability and, pursuant to MCL 208.1437(18), elected a refund of 85% of its remaining SBTA credits. At the time, petitioner sought a refund of $619,390[6] on its 2008 MBTA tax return for its brownfield redevelopment credits.[7]

In December 2011, respondent denied petitioner's request for the $619,390 refund. Respondent took the position that the credit was nonrefundable and could only be carried forward. According to respondent, a qualified taxpayer could only elect a refund for the tax year in which a certificate of completion of the brownfield redevelopment was received. On petition to the MTT, the MTT drew a distinction between credits and credit carryforwards under MCL 208.1437(18), concluding that refunds are only available for credits and not for the carryforward of a credit that was earned under the SBTA. On this basis, the MTT granted respondent's motion for summary disposition and denied petitioner's motion for summary disposition. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

The critical issue in this case is whether a carryforward of a credit earned under the SBTA is refundable as a "credit" under MCL 208.1437(18) of the MBTA.

---

[6] This amount represents the total carryforward credit of $800,000, minus the claimed credit of $71,306, for a remaining carryforward credit of $728,694. Eighty-five percent of $728,694 is $619,390.

[7] Subsequently, and with the idea that its refund request might not be granted, petitioner made what it termed "protective elections" in the amount of $125,698 on its MBTA returns for the 2009–2011 tax years, seeking to use its SBTA credit carryforwards to offset its MBTA liability for those years.

"Where fraud is not claimed, we review the [MTT's] decision for misapplication of the law or adoption of a wrong principle." *Spartan Stores, Inc v Grand Rapids*, 307 Mich App 565, 568; 861 NW2d 347 (2014) (citation and quotation marks omitted). When statutory interpretation is involved, as it is in the instant case, our review is de novo. *Id*. at 569. See also *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 75; 780 NW2d 753 (2010).

"The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Id*. at 76. The first step in the analysis is to examine the plain language of the statute at issue. *Id*. "When construing statutory language, [the court] must read the statute as a whole and in its grammatical context, giving each and every word its plain and ordinary meaning unless otherwise defined." *Mid-American Energy Co v Dep't of Treasury*, 308 Mich App 362, 370; 863 NW2d 387 (2014) (citations and quotation marks omitted; alteration in original). In addition, this Court should avoid a construction that would render any part of the statute surplusage or nugatory. *Id*. "If the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written." *Id*. at 369-370.

B. MCL 208.1437(18)

At issue in this case is the interpretation of MCL 208.1437(18), which provides:

> Except as otherwise provided under this subsection, if the credit allowed under this section for the tax year and any unused carryforward of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year, that portion that exceeds the tax

liability for the tax year shall not be refunded but may be carried forward to offset tax liability in subsequent tax years for 10 years or until used up, whichever occurs first. Except as otherwise provided in this subsection, the maximum time allowed under the carryforward provisions under this subsection begins with the tax year in which the certificate of completion is issued to the qualified taxpayer. If the qualified taxpayer assigns all or any portion of its credit approved under this section, the maximum time allowed under the carryforward provisions for an assignee begins to run with the tax year in which the assignment is made and the assignee first claims a credit, which shall be the same tax year. The maximum time allowed under the carryforward provisions for an annual credit amount for a credit allowed under subsection (4) begins to run in the tax year for which the annual credit amount is designated on the certificate of completion issued under this section. A credit carryforward available under section 38g of former 1975 PA 228 that is unused at the end of the last tax year may be claimed against the tax imposed under this act for the years the carryforward would have been available under former 1975 PA 228. *Beginning on and after April 8, 2008, if the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year, the qualified taxpayer may elect to have the excess refunded at a rate equal to 85% of that portion of the credit that exceeds the tax liability of the qualified taxpayer for the tax year and forgo the remaining 15% of the credit and any carryforward.* [Emphasis added.]

The refund provision at issue appears in the last sentence of MCL 208.1437(18). That sentence provides that in the event "the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year," that qualified taxpayer "may elect to have the excess *refunded* . . ." at a rate of 85%, in exchange for forgoing the remaining percentage of the credit and any carryforward. The pertinent inquiry in determining whether a refund can be obtained is

whether that which is sought to be refunded—a carry-forward of credit that originated under the SBTA—qualifies as a "credit allowed under this section."

### C. WHAT CONSTITUTES A "CREDIT ALLOWED UNDER THIS SECTION"?

To determine what constitutes a "credit allowed under this section"—and whether that includes a credit carryforward—the meaning of the words "credit" and "carryforward" are of critical importance. Neither word is defined by the MBTA. MCL 208.1103 provides that when a term is not defined in the MBTA, that term "shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required." Turning to the Internal Revenue Code, 26 USC 38 describes what constitutes a "general business credit"; business credits are at issue in this case. Notably, 26 USC 38(a) provides that:

> There shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to the sum of—
>
> (1) *the business credit carryforwards carried to such taxable year,*
>
> (2) the amount of the current year business credit, plus
>
> (3) the business credit carrybacks carried to such taxable year. [Emphasis added.]

Thus, under the Internal Revenue Code, a tax credit for a given tax year is designed to be a broad concept that includes certain defined components. One of those components is unequivocally a credit carryforward. See 26 USC 38(a)(1). This understanding borrowed from the Internal Revenue Code demonstrates that the

"credit allowed under [MCL 208.1437(18)]" includes credit that has been carried forward from a prior year to the taxable year. Consequently, the common and ordinary understanding of "credit" and "carryforward" supports the idea that a carryforward is considered a credit for a given tax year.

The idea that a credit—and thus, a "credit allowed under this act"—is an encompassing term that includes carryforwards of credits is buttressed by this Court's opinion in *Ashley Capital, LLC v Dep't of Treasury*, 314 Mich App 1; 884 NW2d 848 (2015). That case, which admittedly did not involve the precise statutes at issue in this case, dealt with the sequence in which credits are to be applied under the MBTA. The respondent in that case—the Department of Treasury—argued that "credits" under the MBTA did not include the "brownfield rehabilitation credits and *carryforward credits that originated under the SBTA*." *Id*. at 5 (emphasis added). In particular, the respondent argued that "the Legislature intended a textual distinction between a 'carryforward' from the SBTA and a 'credit' under the [M]BTA; that is, those credits carried forward from the SBTA cannot be considered 'credits' for purposes of the [M]BTA." *Id*. at 9. In other words, the respondent took a position very similar to the one it takes in this appeal: a carryforward of a brownfield redevelopment credit earned under the SBTA should not be considered a credit under the MBTA.

The panel in *Ashley Capital* rejected this argument, explaining:

> This argument from the Department draws a distinction without a difference. Under the [M]BTA, carryforward credits, brownfield rehabilitation credits, investment credits, and compensation credits *were all available to offset*

*taxpayer liability under the [M]BTA. The mere fact that*
*some credits were carried forward by the Legislature from*
*the SBTA does not alter the clear fact that such carryfor-*
*wards are nonetheless credits which, like other credits,*
*may be used under the [M]BTA to offset liability arising*
*under the [M]BTA.* Indeed, MCL 208.1403(1) referred
broadly to *"any* other credit under this act" (emphasis
added) and it made no distinction between those credits
carried forward from the SBTA and those originating
under the [M]BTA. We decline to read such language into
the statute. [*Id.* at 9-10 (emphasis added).]

Thus, the panel in *Ashley Capital* expressly rejected
the idea that a "carryforward" should not be encom-
passed within the term "credit." Although the case at
bar involves a different section of the MBTA, the
decision in *Ashley Capital* is nevertheless instructive
because it touched on the heart of the dispute in this
case. That is, it weighed in on the issue of whether a
credit, as the term is commonly understood in the
MBTA, encompasses a carryforward of a credit earned
under the SBTA.

In addition to the idea that a carryforward is a credit,
it is apparent from the plain language of MCL
208.1437(18) that the particular carryforward at issue
in this case qualifies as a "credit allowed under this
section." The fifth sentence of MCL 208.1437(18) ad-
dressed the type of carryforward at issue in this case,
providing that "[a] credit carryforward available under
section 38g of former 1975 PA 228[8] that is unused at the
end of the last tax year *may be claimed against the tax*
*imposed under this act* for the years the carryforward
would have been available under former 1975 PA 228."
(Emphasis added.) The key phrase in this sentence
is that the credit carryforward *"may be claimed*

---

[8] This is a reference to MCL 208.38g of the former SBTA, under which
the credits at issue in this case were earned.

*against the tax imposed under this act.*" That the credit carryforward may be claimed against the tax imposed under the act, i.e., may be subtracted from one's tax liability, makes it apparent that the particular carryforward at issue in this case was intended to function as a credit against liability imposed under the MBTA. In other words, a credit earned under the SBTA and subsequently carried forward and claimed against MBTA liability is, according to the plain language of MCL 208.1437(18), a "credit allowed under this section."

Furthermore, it is apparent from the plain language of the statute that the carryforward at issue was a "credit allowed under this section *for the tax year* . . . ." MCL 208.1437(18) (emphasis added). As noted, 26 USC 38(a)(1) describes a carryforward as a credit for purposes of "the taxable year . . . ." And on the subject of what constitutes the "tax year," the MBTA in part defines "the term" to mean "the calendar year, or the fiscal year ending during the calendar year, upon the basis of which the tax base of a taxpayer is computed under this act." MCL 208.1117(4). A carryforward of a credit is available for use in a given tax year, meaning that it can appropriately be considered in calculating tax liability in "the tax year." Hence, the fact that something is a credit carried forward from another tax year does not negate the idea that it is nevertheless a credit "allowed under this section for the tax year." In this sense, we disagree with the dissent's conclusion that the phrase "for the tax year" is rendered nugatory if it is interpreted to include credits carried forward from other years.

### D. PETITIONER WAS ENTITLED TO THE CLAIMED REFUND

In light of the conclusion that the common and ordinary understanding of the term "credit" includes a

carryforward of a credit from a prior year, and in light of the express language in MCL 208.1437(18) that describes the credit carryforward at issue in this case as a credit under the pertinent section, we conclude that petitioner was entitled to the refund it claimed. The last sentence of MCL 208.1437(18) provides a refund for a "credit allowed under this section for the tax year" if such credit "exceeds the qualified taxpayer's liability for the tax year." Put simply, a "credit" allowed under the act encompasses a credit that has been carried forward to the taxable year. Further, there can be no dispute that the credit carryforward at issue in this case was considered a "credit allowed under" the appropriate section. Consequently, we hold that petitioner was correct in its election of an 85% refund of its SBTA credit carryforwards and that it was entitled to a refund under the last sentence of MCL 208.1437(18).

In concluding that petitioner is not entitled to a refund under MCL 208.1437(18), the dissent juxtaposes the first and last sentences of the statute. In this regard, the dissent notes that the first sentence of the statute refers to both credits and carryforwards: "[I]f the *credit* allowed under this section for the tax year *and any unused carryforward* of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year . . . ." MCL 208.1437(18) (emphasis added). In contrast, the sixth sentence—the sentence providing a refund option—refers only to "*the credit* allowed under this section for the tax year . . ." and makes no mention of carryforwards. *Id.* (emphasis added). The dissent concludes that the omission of the word "carryforward" from the sixth sentence was intentional and signals the Legislature's intent not to permit refunds of credit in the form of carryforwards.

We do not find the use of the words "credit" and "carryforward" in the first sentence of MCL 208.1437(18) to be compelling when interpretating the word "credit" in the last sentence of that subsection. Again, tax credits in a given year are commonly understood to include carryforwards. Moreover, it is apparent that the particular credit at issue—one that is carried forward from the SBTA—is expressly treated as a "credit under this section." Therefore, it is also apparent that the carryforward sought to be refunded in this case is, without limitation, a credit. The dissent's interpretation essentially requires the conclusion that the carryforward is a credit for certain purposes but, at the same time, is not a credit for other purposes, simply because of a different sentence in the same statute. Such an interpretation is not supported by the plain language of the statute.

Furthermore, we find the history of the legislation at issue to be pertinent and instructive on this point. As originally enacted, MCL 208.1437(18) lacked a refund option. The subsection provided that:

> If the credit allowed under this section for the tax year and any unused carryforward of the credit allowed under this section exceed the qualified taxpayer's or assignee's tax liability for the tax year, that portion that exceeds the tax liability for the tax year shall not be refunded but may be carried forward to offset tax liability in subsequent tax years for 10 years or until used up, whichever occurs first. Except as otherwise provided in this subsection, the maximum time allowed under the carryforward provisions under this subsection begins with the tax year in which the certificate of completion is issued to the qualified taxpayer. If the qualified taxpayer assigns all or any portion of its credit approved under this section, the maximum time allowed under the carryforward provisions for an assignee begins to run with the tax year in which the assignment is made and the assignee first claims a

credit, which shall be the same tax year. The maximum
time allowed under the carryforward provisions for an
annual credit amount for a credit allowed under subsec-
tion (4) begins to run in the tax year for which the annual
credit amount is designated on the certificate of comple-
tion issued under this section. A credit carryforward
available under section 38g of former 1975 PA 228 that is
unused at the end of the last tax year may be claimed
against the tax imposed under [sic] act for the years the
carryforward would have been available under former
1975 PA 228. [2007 PA 36.]

Later, in 2008 PA 89, the Legislature added the refund
provision at issue in this case, as well as the prefatory
language of "[e]xcept as otherwise provided under this
subsection . . . ." Therefore, the refund option, with its
broad reference to "credit allowed under this section," is
a later-enacted provision that allows the taxpayer to
elect to liquidate the taxpayer's net excess credit (i.e.,
that which "exceeds the qualified taxpayer's tax liability
for the year") and have 85% of the excess amount
refunded in exchange for forgoing the remaining 15%
and the option of any carryforward. The Legislature
could have expressed an intent to prohibit the refund of
credits from carryforwards when it adopted this new
refund provision, but it did not. Instead, it used the
broad and encompassing term of "credit" when provid-
ing an option to liquidate a taxpayer's "credit allowed
under this section for the tax year . . . ." There is no
discernable explanation from reading the plain lan-
guage of the text why there would be any reason to
differentiate and treat credits differently on the basis of
when they were earned. The provision at issue expressly
provides that it applies to "credit allowed under this
section for the tax year"; it does not state that it applies
to credit allowed under this section and *earned during*
the tax year. So long as the credit in question qualifies
as a "credit allowed under this section"—which the

carryforward of brownfield credits in the instant case does—the statute permits the election of an 85% refund option. We decline to read into the last sentence of MCL 208.1437(18) a prohibition on claiming a refund of credit from carryforwards when such prohibition is not apparent from the plain language of the statute.

### III. CONCLUSION

In light of this analysis, we reverse the decision of the MTT and hold that petitioner was entitled to its elected refund for the 2008 tax year. Accordingly, we reverse and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.[9]

BORRELLO, J., concurred with BECKERING, J.

METER, P.J. (*dissenting*). I respectfully dissent. In my opinion, the Michigan Tax Tribunal (MTT) properly applied the principles of statutory construction in interpreting MCL 208.1437(18).

As noted by the majority, petitioner claimed a refund for 85% of the remainder of its brownfield redevelopment credits pursuant to the following provision:

[I]f the credit allowed under this section for the tax year exceeds the qualified taxpayer's tax liability for the tax year, the qualified taxpayer may elect to have the excess refunded at a rate equal to 85% of that portion of the credit that exceeds the tax liability of the qualified taxpayer for the tax year and forgo the remaining 15% of the credit and any carryforward. [MCL 208.1437(18).]

Respondent denied petitioner's claim for a refund under this provision because respondent construed the

---

[9] In light of our resolution of this issue, we find it unnecessary to address petitioner's remaining claims.

provision as excluding refunds for credits earned under the Michigan Single Business Tax Act, MCL 208.1 *et seq.*,[1] like those at issue in this case, and carried forward. The MTT agreed.

The primary goal of statutory construction is to determine the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). To determine the Legislature's intent, this Court examines the specific language of the statute. *Gauntlett v Auto-Owners Ins Co*, 242 Mich App 172, 177; 617 NW2d 735 (2000). "Courts may not speculate regarding legislative intent beyond the words expressed in a statute. Hence, nothing may be read into a statute that is not within the manifest intent of the Legislature as derived from the act itself." *Mich Ed Ass'n v Secretary of State (On Rehearing)*, 489 Mich 194, 217-218; 801 NW2d 35 (2011) (citations and quotation marks omitted).

An examination of the specific language of the statute at issue indicates that the Legislature did not intend to provide a refund for credit carryforwards. The first sentence of MCL 208.1437(18) states, "[I]f *the credit allowed under this section for the tax year and any unused carryforward of the credit allowed under this section* exceed the qualified taxpayer's or assignee's tax liability for the tax year, that portion that exceeds the tax liability for the tax year shall not be refunded but may be carried forward to offset tax liability in subsequent tax years for 10 years or until used up, whichever occurs first." (Emphasis added.) The word "and" means "in addition to[.]" *Titan Ins Co v State Farm Mut Auto Ins Co*, 296 Mich App 75, 85; 817 NW2d 621 (2012). The sixth sentence of MCL 208.1437(18), which petitioner

---

[1] The Single Business Tax Act was repealed by 2006 PA 325, effective December 31, 2007.

relies on for a refund, states: "[I]f *the credit allowed under this section for the tax year* exceeds the qualified taxpayer's tax liability for the tax year, the qualified taxpayer may elect to have the excess refunded . . . ." (Emphasis added.) Importantly, the sixth sentence does *not* contain a reference to an *unused carryforward of the credit* allowed under the section. "The omission of a provision in one part of a statute that is included in another should be construed as intentional . . . ." *People v Barrera*, 278 Mich App 730, 741; 752 NW2d 485 (2008) (citations and quotation marks omitted).

The fact that the Legislature included the phrase "and any unused carryforward" in the first sentence of MCL 208.1437(18) but did not include that phrase in the sixth sentence of that subsection indicates that the Legislature intended the first portion of MCL 208.1437(18) to apply to both "credit allowed under this section for the tax year" and "unused carryforward of the credit allowed under this section" but intended the refund portion at issue to apply only to "the credit allowed under this section for the tax year . . . ."

I acknowledge that petitioner appears to be correct that a carryforward is a type of credit rather than something wholly distinct from a credit. However, this does not lead to the conclusion that when the statute distinctly refers to "the credit allowed under this section for the tax year," it also is referring to an unused carryforward of credit. As discussed, the inclusion of the term "carryforward" in the first sentence, when compared to the omission of that term in the sixth sentence, indicates that the omission was intentional. Importantly, if this Court were to interpret the refund portion of the statute as argued by petitioner and apply it to all credits, it would render some of the statutory language nugatory. The language used in the

sixth sentence of MCL 208.1437(18) is "the credit allowed under this section for the tax year . . . ." The phrase "for the tax year" would be rendered nugatory if it were ignored in order to include credits carried over from other years. Every phrase in a statute must be given effect so as not to render any part of the statute nugatory. *Jenkins v Patel*, 471 Mich 158, 167; 684 NW2d 346 (2004). Had the Legislature intended to include carryforward credits in the provision allowing for refunds, i.e., the sixth sentence, it could have included language indicating that intent just as it did in the first sentence. See, generally, *Gray v Chrostowski*, 298 Mich App 769, 777; 828 NW2d 435 (2012).

There is no dispute that petitioner's credits were carryforward credits. Therefore, I conclude that there was no genuine question of material fact that petitioner could not receive a refund under the statute at issue and that the MTT properly granted respondent's motion for summary disposition. I find unpersuasive the nonbinding caselaw and inapposite statute cited by petitioner. I also find unpersuasive petitioner's reliance on *Ashley Capital, LLC v Dep't of Treasury*, 314 Mich App 1; 884 NW2d 848 (2015). In that case, while the Court discussed credits and carryforward credits, it simply did not address the issue we face today, i.e., the interpretation of the last sentence of MCL 208.1437(18). Finally, I have considered the additional issue, involving former MCL 208.38g(34)(c), that petitioner raised at an informal conference and have found it to provide no basis for reversal.

I would affirm.